IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FERNANDO GIL-CARMONA,<br><br>**Petitioner**<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>**Respondent.** | **CIVIL. NO.** 08-2277(JAG)<br>**REL. CRIM. NO.** 03-292 (JAG) |

**OPINION AND ORDER**

Garcia-Gregory, D.J.

Before the Court stands petitioner's motion for *habeas corpus* relief under 28 U.S.C. § 2255 (Docket No. 1). For the reasons discussed below, Petitioner's Motion is hereby **DENIED**.

**PROCEDURAL BACKGROUND**

Petitioner filed the instant motion requesting *habeas* relief on November 7, 2008. The same was referred to U.S. Magistrate Judge Marcos Lopez, who issued a Report and Recommendation on the matter on February 9, 2011. (Docket No. 17). Given the Magistrate Judge's decision to hold a hearing on petitioner's writ, the Court found that counsel should have been appointed to represent petitioner. (Docket No. 24). As such, the

Court furnished petitioner with legal representation and remanded his motion to the Magistrate Judge for a second evidentiary hearing.

The second hearing took place on November 29, 2011. According to the Magistrate Judge, both petitioner and Federal Public Defender Hector Guzmán (petitioner's trial counsel), reaffirmed the statements they gave in the prior hearing. (Docket No. 42, p. 1). The Magistrate Judge issued a supplemental Report on the matter, reiterating his findings and recommending once again that petitioner's motion be dismissed. (Docket No. 42).

**DISCUSSION**

Petitioner limits his objections to the Magistrate Judge's findings regarding "the denial of an alleged failure of FPD Guzman to communicate the Government's Plea Offer … and the Safety Valve Provisions to Mr. Gil Carmona." (Docket No. 43, ¶ 2). After a *de novo* review, the Court finds that the rest of the Report and Recommendation is well-founded in fact and law. Accordingly, the Court **ADOPTS** the Magistrate Judge's recommendation to dismiss the petition as to the following alleged failures by defense counsel: 1) to pursue defendant's theory at trial; 2) to request specific discovery material pursuant to Brady v. Maryland; and 3) to present an argument

**CIVIL. NO.** 08-2277(JAG)                                                        3

that mitigated the impact of defendant's nationality with the jury. (See Docket No. 17).

In his objections, petitioner contends that the Magistrate Judge erred in weighing the testimonies offered by affidavit and in the § 2255 hearings. The Court is not convinced.

The Magistrate Judge held two hearings in which the testimonies proffered were consistent with each other. In these hearings, the Magistrate Judge made credibility determinations regarding the testimonies of both petitioner and FPD Guzman. It is well settled law that when findings are based on determinations regarding the credibility of witnesses, great deference is given to the trial court's findings; "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Anderson v. Bessemer City, 470 U.S. 564, 575 (1985); see also Wainwright v. Witt, 469 U.S. 412 (1985); United States v. Henderson, 463 F.3d 27, 32 (1st Cir. 2006).

When documents or objective evidence contradicts the witness' story; or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it, a reviewing court may well find clear error even in a finding purportedly based on a credibility

determination. Id.; see also United States v. Forbes, 181 F.3d 1, 7-8 (1st Cir. 1999).

However, there is no such evidence that lends credence to petitioner's argument. Nor is FPD Guzman's story implausible or inconsistent. All we have are the competing testimonies of petitioner and an experienced criminal defense attorney.

Petitioner claims that FPD Guzman failed to communicate the government's plea offer to him. At the hearing held on October 28, 2010, the Magistrate Judge found that:

> FPD Guzmán, who has over thirty years of experience as an attorney, testified that it is his customary practice to show to and/or discuss with his clients any discovery received from the government, to request a plea offer from the government, and to communicate to his clients any plea offers made by the government so that his clients can make an informed decision as to whether they wish to proceed to trial or to enter into a plea negotiation process. Furthermore, FPD Guzmán testified that he always explains to his clients the benefits and disadvantages of going to trial vis-a-vis entering a guilty plea. It is his practice also to communicate to his clients the strengths and weaknesses of their particular case.
>
> FPD Guzmán also explained at the hearing that petitioner Gil always maintained from the very beginning that he was not guilty of the offenses charged and that it was his goal to enter the United States, first by traveling from Colombia to the Dominican Republic, then by traveling from the Dominican Republic to Puerto Rico, and finally by traveling from Puerto Rico to the continental United States. It was petitioner's theory - and testimony at

> trial -- that he never knew about the presence of any controlled substances in the vessel that was intercepted by the federal authorities and that he was merely attempting to enter the United States.
>
> FPD Guzmán indicated during the hearing held on October 28, 2010 that he indeed received a plea offer made by the government (Docket No. 1-3 in 08-2277 (JAG)) and discussed it with Gil several times. Gil initially wanted to think about the plea offer, but at all times told FPD Guzmán that he was not guilty of the offenses charged in the indictment. Gil requested time to think about the plea offer, and FPD Guzmán allowed him time to think about it. Ultimately, however, Gil told FPD Guzmán that he could not admit culpability. According to FPD Guzmán, although on the first day of trial Gil was apprehensive, he still maintained his wish to proceed to trial.

(Docket No. 17, p. 4-5). On that basis, the Magistrate Judge did not "find credible Gil's allegations that FPD Guzmán never communicated and discussed the government's plea offer with him, particularly since defense counsel followed the customary practice that he has employed for the past thirty years." (Id.).

The Court cannot fathom any reason why an experienced criminal defense attorney would neglect to give his client a plea offer furnished by the government. While record is silent on this matter, the Magistrate Judge's credibility findings militate strongly against finding for petitioner.

The Magistrate Judge made similar findings with respect petitioner's claim that FPD Guzmán never discussed the

sentencing guidelines with him, and in particular the safety valve provision:

> FPD Guzmán testified that he was "quite sure" that the safety valve was discussed with Gil during the plea offer stage. This testimony is consistent with the fact that the government's plea offer letter contains a two level reduction that takes into account the application of the safety valve. (Docket No. 1-3 at 13). Furthermore, FPD Guzmán indicated that it is his customary practice to advise his clients about the possibility of obtaining a reduction in their sentence by means of the safety valve and about how the safety valve requires defendants to disclose everything they know about the case to the prosecution. FPD Guzmán stated that he could not find any motive to think that he deviated from his standard practice when advising Gil. Finally, at the sentencing phase, according to the testimony at the hearing on November 29, 2011, FPD Guzmán argued that Gil had qualified for the safety valve through the debriefing that he underwent with law enforcement agents/officers after being convicted at trial.

Thus, it is evident that the Magistrate Judge's assignment of weight was reasonable and supported by the record. Thus, the Court in its discretion will give full weight to the Magistrate Judge's determinations. See U.S. v. Raddatz, 447 U.S. 667 (1980)(a district judge has broad discretion to accept, reject or modify a magistrate judge's findings, including credibility determinations); see also Id. (noting, in *dicta*, that "it is unlikely that a district judge would reject a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so

**CIVIL. NO.** 08-2277(JAG)                                                            7

without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions…").

### CONCLUSION

For the reasons stated above, petitioner's motion for *habeas* relief under § 2255 is hereby denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 9th day of May, 2012.

                                    S/ Jay A. Garcia-Gregory
                                      JAY A. GARCIA-GREGORY
                                    United States District Judge